UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHELSEA A.,

       Plaintiff,

           v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____

<u>DECISION AND ORDER</u>

21-CV-6224DGL

   Plaintiff appeals from a denial of disability benefits by the Acting Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

   On September 3, 2018, plaintiff, then twenty-seven years old, filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 29, 2018. (Administrative Transcript, Dkt. #7 at 15).

   Plaintiff's application was initially denied. She requested a hearing, which was held via telephone conference on May 12, 2020 before Administrative Law Judge ("ALJ") Matthew Kuperstein. The ALJ issued an unfavorable decision on September 30, 2020. (Dkt. #7 at 15-28). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 12, 2021. (Dkt. #7 at 1-3). Plaintiff now appeals.

   The plaintiff has moved for remand of the matter for further proceedings (Dkt. #8), and the Commissioner has cross moved (Dkt. #10) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, which reflect treatment for depressive disorder, anxiety disorder, and bipolar disorder. The ALJ determined that these conditions together constituted a severe impairment not equaling a listed impairment. (Dkt. #7 at 18).

Applying the special technique for mental impairments, the ALJ found that plaintiff has: (1) a mild limitation in understanding, remembering, and applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in maintaining concentration, persistence and pace; and (4) a moderate limitation in adapting and managing herself. (Dkt. #7 at 19). The ALJ therefore concluded that plaintiff's mental impairments were not, by themselves, disabling.

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: performance of simple, routine, and repetitive tasks involving no interaction with the general public, and no more than occasional interaction with coworkers, supervisors, or the general

public. Further, plaintiff cannot perform work involving teamwork or collaboration with others. (Dkt. #8 at 17).

At the hearing, the ALJ asked the vocational expert, Yaakov Taitz, whether work existed in significant numbers in the national economy for a hypothetical person of plaintiff's age (younger individual), educational background (marginal, 8th grade), and RFC. The vocational expert testified that such an individual could not perform plaintiff's past relevant work as a home attendant, but could perform the representative unskilled positions of mail clerk, marker, and router clerk. (Dkt. #7 at 26-27). The ALJ accordingly found plaintiff "not disabled."

## I.     Treating and Examining Source Opinions

Plaintiff chiefly argues that that the ALJ erred in his assessment of the medical opinions of record, and failed to sufficiently support his rejection of the majority of the opined limitations in crafting his RFC. The Court agrees.

In assessing medical opinion evidence, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider *all* medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§404.1520c(c), 416.920c(c)(emphasis added). The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions of record, and must specifically

explain how the supportability and consistency factors were weighed. *See Salleh D. v. Commissioner*, 2022 U.S. Dist. LEXIS 427 at \*9-\*11 (W.D.N.Y. 2022).

Here, the record contained four opinions from treating or examining sources concerning plaintiff's mental limitations. Treating Licensed Clinical Social Worker ("LCSW") Amy Stolberg completed a report on February 11, 2020. (Dkt. #7 at 1356-58). Ms. Stolberg noted that plaintiff had a history of sleep difficulties, isolation, depression, anxiety, and other issues. Plaintiff had been hospitalized as a teenager for symptoms of bipolar disorder, and had "lost several jobs" in the years since due to mental health issues. Plaintiff's diagnoses included unspecified bipolar disorder, social anxiety, attention deficit hyperactivity disorder, and unspecified anxiety disorder. Ms. Stolberg assessed "marked to extreme" limitations in all areas of functioning, including understanding and following simple instructions and performing simple tasks, maintaining attention and concentration for rote tasks, and dealing with work-related stress. *Id*. The ALJ found Ms. Stolberg's opinion "persuasive only to the extent that it is consistent with the [RFC]" that the ALJ ultimately determined, implicitly opting not to credit any of Ms. Stolberg's assessments of marked or extreme limitations in any area. (Dkt. #7 at 23).

Treating LCSW Jennifer Farah rendered on opinion on August 21, 2019, noting that plaintiff had depression, anxiety, a history of panic attacks and agoraphobia, and presented with a guarded, anxious mood and congruent affect. She opined that plaintiff could understand simple instructions, was mildly limited in maintaining attention and concentration, and was moderately limited in social interactions, attending to a routine and schedule, and working closely with others. Ms. Farah opined that plaintiff was markedly limited in her ability to deal with work-related stress. (Dkt. #7 at 1360-63). The ALJ found Ms. Farah's opinion "persuasive only to the extent that it is

4

consistent with the [RFC]" that the ALJ ultimately determined, evidently rejecting the opined marked limitation in dealing with work-related stress. (Dkt. #7 at 23).

Treating physician Dr. Anna Jack authored an opinion on January 30, 2019. (Dkt. #7 at 1371-74). She reported that plaintiff suffers from anxiety, depression, agoraphobia and panic attacks, as well as several physical ailments. She opined that plaintiff was moderately limited in understanding simple instructions, maintaining a routine and schedule, and performing low-stress and simple tasks. Dr. Jack indicated that plaintiff was very limited in her ability to perform simple and complex tasks independently, or to maintain attention and concentration. The ALJ found Dr. Jack's opinion "persuasive only to the extent that it is consistent with the [RFC]" that the ALJ ultimately determined, thus declining to credit her opinion concerning the bulk of plaintiff's moderate and marked limitations.

Consulting psychologist Dr. Todd Deneen (misidentified by the ALJ as "Dr. Dineen Todd") examined plaintiff on October 24, 2018. Dr. Deneen noted plaintiff's history of psychiatric hospitalization as an adolescent, and her diagnoses of bipolar disorder, panic disorder with agoraphobia, and major depressive disorder. On examination, plaintiff's mood and affect were anxious, with intact memory, below average intellectual functioning, and mildly impaired memory. Dr. Deneen opined that plaintiff would have, in addition to some mild limitations, moderate limitations in maintaining a routine and schedule, maintaining emotions, controlling behavior, and maintaining well-being. (Dkt. #7 at 525-29). The ALJ found that Dr. Todd's opinion had "some persuasiveness," but observed that it did not describe a specific functional capacity, so much as it indicated moderate limitations in the areas relevant to the special technique, and purported to have adopted it therein. To the extent Dr. Deneen's opinion had assessed moderate

limitations in the function of maintaining a routine and schedule, the ALJ did not address those limitations.

In sum, the ALJ rejected every medical opinion that provided a function-by-function assessment of plaintiff's mental limitations, with no meaningful discussion of the evidence supporting or undermining the opinions as to any specific function. For each one, the ALJ gave the exact same reasoning: (1) that the opinion was only "persuasive . . . to the extent that it is consistent with the residual functional capacity" determined by the ALJ; (2) that plaintiff's ability to "coordinat[e] the birth of her third child," care for her three children during the COVID-19 pandemic, own a dog, and perform household tasks like laundry was inconsistent with greater limitations; (3) that plaintiff's "rather active social life" was inconsistent with greater limitations; and (4) plaintiff's anxiety appeared to be caused by "dissatisfaction with her romantic partners" and did not prevent her from engaging in childcare and housework. (Dkt. #7 at 23-25).

These reasons were not a proper or sufficient basis to reject the medical opinions of record.

Initially, the ALJ's circular reasoning in tying the persuasiveness of each opinion to his own RFC finding was improper. Simply put, an "ALJ cannot credit a medical opinion to the extent it is consistent with h[is] already-determined RFC." *Potts v. Commissioner*, 2018 U.S. Dist. LEXIS 192258 at *10 (W.D.N.Y. 2018)(citing *Faherty v. Astrue*, 2013 U.S. Dist. LEXIS 44966 at *40 (E.D.N.Y. 2013)(where an ALJ assigned weight to medical opinions based on their consistency with her RFC determination, "[s]uch reasoning is circular and flawed. The ALJ should use medical opinions to determine Plaintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC").

Further, while the ALJ was entitled to consider plaintiff's ability to manage a household or participate in childcare as part of her activities of daily living, the ALJ appears to have placed

undue reliance on this factor. While it is unclear what the ALJ meant in referring to plaintiff's ability to "coordinate" the birth of a child, his assumption that plaintiff's mere ability to care for her children at home during the COVID pandemic, own a dog, or perform minor household tasks such as doing laundry, indicated the capacity to perform full-time work, was improper. It is well settled that "the mere fact that [a claimant] is mobile and able to engage in some light tasks at [her] home does not alone establish that [s]he is able to engage in substantial gainful activity." *Lecler v. Barnhart*, 2002 U.S. Dist. LEXIS 22070 at *18 (S.D.N.Y. 2002). *See also Scott v. Berryhill*, 2018 U.S. Dist. LEXIS 211256 at *17 (W.D.N.Y. 2018)(citing *Dailey v. Colvin*, 2017 U.S. Dist. LEXIS 91579 at *13 (W.D.N.Y. 2017)("[c]ourts have consistently noted that [i]t is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing his or her ability to engage in substantial gainful activity")(internal quotation marks and citation omitted).

The ALJ did not discuss or acknowledge the differences between "being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' i.e., '8 hours a day, for 5 days a week." *Harris v. Colvin*, 149 F.Supp. 3d 435, 444 (W.D.N.Y. 2016). *See also Moss v. Colvin*, 2014 U.S. Dist. LEXIS 121472 at *85 (S.D.N.Y. 2014)("[t]here are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job"); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 519 (S.D.N.Y. 2000)(it is well-settled law in the Second Circuit that the ability to perform basic daily activities does not, in itself, contradict a claim of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves [or their children]").

With respect to the ALJ's references to plaintiff's "rather active social life," the ALJ appears to have misconstrued the record. The only evidence cited by the ALJ to support this

conclusion was that plaintiff had gone on two dinner dates in February 2020. (Dkt. #7 at 20). In the context of plaintiff's mental health treatment records, which repeatedly noted her "isolation," lack of family support, and difficulties with interpersonal relationships in general, the ALJ's description of plaintiff as having an "active social life" was not supported by the record.

Nor was the ALJ's finding, that plaintiff's anxiety was triggered by difficulties with a romantic partner, well-supported. Although plaintiff's treatment records contain fleeting references to frustration with a boyfriend, plaintiff's complaints of difficulty concentrating, hopelessness, fatigue, paranoia, anxiety, depression, lack of motivation, and anxiety in public, were pervasive and consistent, irrespective of her relationship status. (Dkt. #7 at 583-641, 661-66, 1258-1343).

In sum, the ALJ rejected significant limitations that were consistently opined by most or all of the treating or examining medical sources with respect to plaintiff's mental RFC, without any detailed analysis or well-supported explanation. "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [the ALJ] cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995)(*quoting Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Because the rejected opinions unanimously supported mental limitations over and above what the ALJ determined in his RFC finding, such error was not harmless, and remand is necessary.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence and was the product of legal error. The plaintiff's motion for judgment on the pleadings

(Dkt. #8) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #10) is denied, and this matter is remanded for further proceedings.

On remand, the ALJ should render a new decision which properly considers the medical opinion evidence of record, with a detailed analysis of the supportability and consistency factors, and a discussion of his reasoning for why each of the opined functional limitations has been credited or rejected, sufficient to permit meaningful review.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
         June 1, 2023.